IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LISA M. GRACZYK, MATTHEW M. JORGE, and BRIAN WILLINGHAM Individually and on behalf of others similarly situated, | : Case No.: 1:09-cv-04760 (RWG) : : : : |
| Plaintiffs, | : |
| v. | : : |
| WEST PUBLISHING CORP., a Minnesota corporation, | : : |
| Defendant. | : : : |

## INDEX OF EXHIBITS

A.    *Lake v. Neal*, No. 08-3765, 2009 WL 3673086 (7th Cir. Nov. 6, 2009)

B.    *Parus v. Cator*, No. 05-C-0063-C, 2005 WL 2240955 (W.D. Wis. Sept. 14, 2005)

C.    Brief of the State of Texas as Amicus Curiae Supporting Defendants, *Taylor v. Acxiom Corp.*, Nos. 08-41083, 08-41180, and 08-41232 (5th Cir. May 7, 2009)

D.    Letter from Robert L. Quinan, Jr., Assistant Attorney General, to Paul J. Bond (Nov. 10, 2009) (enclosing Department of Justice Opinion Letter to Peter Sacks, Massachusetts Office of the Attorney General (Oct. 9, 1998) and letter from Peter Sacks to Eleanor Dean Acheson, Assistant U.S. Attorney General (May 1, 1998))

US_ACTIVE-102668541.1

# EXHIBIT A

Westlaw.

--- F.3d ----, 2009 WL 3673086 (C.A.7 (Ill.))
**(Cite as: 2009 WL 3673086 (C.A.7 (Ill.)))**

**H**Only the Westlaw citation is currently available.

United States Court of Appeals,
Seventh Circuit.
**Joseph LAKE**, individually and on behalf of all
persons similarly situated, Plaintiff-Appellant,
v.
**Langdon D. NEAL**, et al., Defendants-Appellees.
**No. 08-3765.**

Argued Sept. 14, 2009.
Decided Nov. 6, 2009.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division. No. 07
C 2742-Robert W. Gettleman, Judge.
Nicholas C. Kefalos, Adolfo Mondragon, Vernor
Moran, Chicago, IL, for Plaintiff-Appellant.

Terrence M. Burns, Dykema, Chicago, IL, for De-
fendants-Appellees.

Before EASTERBROOK, Chief Judge, and BAUER
and EVANS, Circuit Judges.

EVANS, Circuit Judge.

**\*1** The *Duck Test* holds that if it walks like a duck,
swims like a duck, and quacks like a duck, it's a duck.
**Joseph Lake**, the plaintiff in this suit, flunks the
*Duck Test.* He says, in effect, that if it walks like a
duck, swims like a duck, and quacks like a duck, it
sure as heck isn't a duck.

The crux of Lake's argument in this appeal is that a
voter registration form is actually a motor vehicle
record. He argues that the Chicago Board of Election
Commissioners (Board) violated the Driver's Privacy
Protection Act (DPPA) [FN1]-which regulates motor
vehicle records-by disclosing personal information it
obtains from voter registration records that were
completed at an office of the Illinois Department of
Motor Vehicles (DMV). After a parallel claim in
state court was dismissed with prejudice, Lake insti-
tuted this class action suit against the Board. Recog-
nizing a fatal flaw in Lake's argument, the district
court granted the' motion to dismiss for failure to

state a claim.

> FN1. 18 U.S.C. §§ 2721-25.

Because this case comes to us on an appeal from an
order granting a motion to dismiss for failure to state
a claim, we accept as true all well-pleaded facts al-
leged, drawing all possible inferences in the's favor.
*Lachmund v. ADM Investor Servs., Inc.,* 191 F.3d
777, 782 (7th Cir.1999). Here are the facts.

In 1998, Lake applied for a driver's licence at an of-
fice of the Illinois DMV. Pursuant to the National
Voter Registration Act (NVRA),[FN2] he exercised an
option to register to vote at the same time. He filled
out and submitted a voter registration form, which
was attached to the driver's license application. The
completed voter registration form was transmitted to
the Board. In 2007, a fellow named Peter Zelchenko
acquired Lake's personal information-he says it was
his name, date of birth, sex, address, former address,
phone number, and social security number [FN3]-by
simply asking the Board for it. Zelchenko informed
Lake that he acquired his personal information from
the Board.

> FN2. 42 U.S.C. § 1973.

> > FN3. Although we are required to accept as
> > true the facts as pled, we have a hard time
> > believing that the Board, in this day and age,
> > would intentionally release a registered
> > voter's social security number.

Lake raises two issues on appeal, but we need only
discuss one: Did his complaint state a cause of action
under the DPPA?

The district court dismissed the complaint for failure
to state a claim after it determined that a voter regis-
tration form filled out at the DMV under the NVRA
is not a motor vehicle record under the DPPA. We
review grants of motions for failure to state a claim
*de novo. Hickey v. O'Bannon,* 287 F.3d 656, 657 (7th
Cir.2002).

A bit of background on the two statutes is necessary.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2009 WL 3673086 (C.A.7 (Ill.))
**(Cite as: 2009 WL 3673086 (C.A.7 (Ill.)))**

The DPPA regulates the ways a DMV can disclose information. Congress passed the DPPA in response to safety and privacy concerns stemming from the ready availability of personal information contained in state motor vehicle records. The most prominent example of the realization of these concerns was the 1989 murder of actress Rebecca Schaeffer, star of the television series "My Sister Sam." *See* 137 Cong. Rec. 27, 327 (1993). An obsessed fan stalked and killed the actress, in her own apartment, after he obtained her unlisted address from the California DMV. The second statute, the NVRA, allows eligible citizens to register to vote while applying for a driver's license. Congress passed the NVRA to (1) make it easier to register to vote and (2) to help protect the integrity of the process by ensuring that accurate voter registration rolls are maintained.

**\*2** The basis for plaintiff's claim is § 2724 of the DPPA, which creates a private cause of action against "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter...." The DPPA defines a motor vehicle record as "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles[.]" The issue for us is whether the voter registration form that Lake filled out at the DMV is a "motor vehicle record" under the DPPA. It qualifies as such only if it "pertains" to one of the documents mentioned in the statute.

The plain language of both statutes makes it clear that a voter registration form filled out pursuant to the NVRA does not "pertain" to any of the listed DMV documents. The dictionary tells us that "pertain" means "to belong as a part, member, accessory, or product." [FN4] The voter registration form, which is filled out separately and at the applicant's option, is not a part, member, accessory, or product of a motor vehicle operator's permit. Other than the fact that it is filled out simultaneously with a driver's license application, the voter form has nothing to do with, nor does it "pertain" to, a motor vehicle operator's permit.

FN4. Merriam-Webster's Collegiate Dictionary (11th ed.2004).

Finally, we would not accept Lake's argument even if a literal interpretation of the DPPA would seem to compel it because that would "lead to an absurd result...." *Castellon-Contreras v. INS*, 45 F.3d 149, 153 (7th Cir.1995) (citing *Born v. United States*, 498 U.S. 1126 (1991)). The Board receives voter registration forms from a variety of sources. The Illinois DMV, pursuant to the NVRA, is one such source. All voter registration forms contain the same basic information, which the Board must-according to Illinois state law-make available to the public. *See* 10 Ill. Comp. Stat. Ann. 5/6-35 (2009). Accepting Lake's argument would lead to an absurd situation: the Board violates federal law when it discloses the personal information it receives from the DMV pursuant to the NVRA but does not violate federal law when it discloses the same personal information it receives from other sources. This result also likely contravenes the purpose of the NVRA, which is to increase voter registration in federal elections. If it is against federal law for the Board to disclose the voter information it receives from the DMV, but against state law to not make it publicly available, the Board will likely be forced to stop accepting voter registration forms received from the DMV. That would nullify an important purpose of the NVRA.

Since a voter registration form filled out at the DMV is not a motor vehicle record under the DPPA, the Board could not have violated the DPPA by disclosing Lake's personal information to the extent that it did.

Accordingly, the judgment of the district court is AFFIRMED.

C.A.7 (Ill.),2009.
Lake v. Neal
--- F.3d ----, 2009 WL 3673086 (C.A.7 (Ill.))

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT B

Westlaw

Not Reported in F.Supp.2d, 2005 WL 2240955 (W.D.Wis.)
**(Cite as: 2005 WL 2240955 (W.D.Wis.))**

**H**Only the Westlaw citation is currently available.

United States District Court,
W.D. Wisconsin.
William A. PARUS, Plaintiff,
and
ALLSTATE INSURANCE COMPANY, Intervening
Plaintiff,
v.
Andrew C. CATOR, Thomas Kroeplin, Dawn
Bresnahan, individually and in her official capacity
as an employee of the Town of Minocqua Police De-
partment, Town of Minocqua, Wisconsin, Clay Kreit-
low, individually and in his capacity as an employee
of the Town of Woodruff Police Department, and
Town of Woodruff, Wisconsin, Defendants.
No. 05-C-0063-C.

Sept. 14, 2005.

Richard M. Burnham, for Plaintiff.

Mark P. Wendorff, Wendorff, Ellison, Noteboom &
David, Wausau, WI, for Defendants.

OPINION AND ORDER

CRABB, J.

*1 In this civil action for monetary relief, plaintiff
William A. Parus contends that defendants Kreitlow
and Town of Woodruff, Wisconsin, illegally obtained
his personal information from the Department of Mo-
tor Vehicles database in violation of the Driver's Pri-
vacy Protection Act of 1994, 18 U.S.C. § 2721. Ju-
risdiction is present under 28 U.S.C. § 1331.

This case is before the court on defendants Clay
Kreitlow and Town of Woodruff's motion for sum-
mary judgment. (Intervening plaintiff Allstate Insur-
ance Co. has not filed a response to defendants' mo-
tion. Because intervening plaintiff plays no role in the
relevant facts of this case, all references to "plaintiff"
will be to William A. Parus.) Defendants Thomas
Kroeplin and Andrew Cator have filed separate mo-
tions for summary judgment. Each of those motions
will be decided in separate orders.

Plaintiff and defendants Kreitlow and Town of
Woodruff agree that on September 20, 2004, defen-
dant Kreitlow obtained plaintiff's personal informa-
tion from the Department of Motor Vehicles data-
base. They disagree about defendant Kreitlow's rea-
son for doing so. I conclude that resolution of the
disagreement is material to the outcome of this law-
suit and therefore will deny defendants' motion.

From the parties' proposed findings of fact, I find the
following to be material and undisputed.

UNDISPUTED FACTS

On September 20, 2004, at approximately 1:30 p.m.,
defendant Clay Kreitlow, a police officer employed
by the Town of Woodruff, Wisconsin, was on duty
when defendant Andrew Cator entered the police
department with a piece of paper in his hand. Defen-
dant Cator asked defendant Kreitlow to "run a license
plate number" on a vehicle defendant Cator said he
wanted to purchase.

Defendant Kreitlow was suspicious of defendant Ca-
tor's motives. (At some time prior to September 24,
2004, the Woodruff Police Department had con-
ducted an investigation involving defendant Cator. In
addition, defendant Kreitlow had stopped defendant
Cator several times for traffic violations.) Defendant
Kreitlow decided to investigate the request.

Defendant Kreitlow used a recorded telephone line to
contact defendant Dawn Bresnahan, a dispatcher with
the Minocqua Police Department. Defendant Kreit-
low gave defendant Bresnahan the license plate num-
ber and asked her to "run" the number and provide
him with information about the individual who
owned the vehicle. Defendant Bresnahan gave defen-
dant Kreitlow the information he requested, including
the name of the vehicle owner, plaintiff William A.
Parus. Defendant Kreitlow did not recognize plain-
tiff's name.

After ending his call to defendant Bresnahan, defen-
dant Kreitlow asked defendant Cator why he wanted
the vehicle owner's information. Defendant Cator

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2240955 (W.D.Wis.)
**(Cite as: 2005 WL 2240955 (W.D.Wis.))**

stated again that he wanted to purchase the vehicle.

It is the policy of the Woodruff Police Department not to divulge to the public personal information from the Department of Motor Vehicles database. Having successfully completed all courses relevant to the department's policies and procedures, defendant Kreitlow was aware of this policy. Despite defendant Cator's requests, defendant Kreitlow did not disclose plaintiff's personal information to defendant Cator; however, defendant Kreitlow did tell defendant Cator that the owner of the vehicle was "a local guy."

*2 Defendant Cator became frustrated and asked why defendant Kreitlow would not give him the information. Defendant Kreitlow told defendant Cator that police officers do not give out personal information because they do not know how the information they disclose might be used. Defendant Cator asked defendant Kreitlow which officer would be on duty next. Defendant Kreitlow told him that Officer William B. Rhodes would be working the next shift. Defendant Kreitlow wrote a note to Rhodes explaining the situation and defendant Cator left the police department. The interaction between defendant Kreitlow and defendant Cator lasted ten to fifteen minutes.

Immediately after defendant Cator left, defendant Kreitlow called defendant Bresnahan and explained to her why he had requested the vehicle owner's information. Defendant Kreitlow told defendant Bresnahan to not provide information about the license plate number or owner of the vehicle to anyone else. Defendant Kreitlow also directed defendant Bresnahan to leave a note for later shift officers telling them not to disclose the information.

## OPINION

Defendant's motion for summary judgment raises two questions. First, on the basis of the undisputed facts and the reasonable inferences that can be drawn from them, could a jury find that defendant Kreitlow violated the Driver's Privacy Protection Act when he obtained plaintiff's personal information from the Department of Motor Vehicles database? Second, if defendant Kreitlow violated the Act even though defendant Kreitlow did not disclose or use the information he obtained? The answer to both questions is yes.

### A. *The Driver's Privacy Protection Act and the Law Enforcement Exception*

Congress passed the Driver's Privacy Protection Act of 1994 to limit the release of personal driver information contained in motor vehicle records. *Kehoe v. Fidelity Federal Bank & Trust*, --- F.3d ----, 2005 WL 2043055 at *1 (11th Cir. Aug.26, 2005). The Act prohibits the release of a motorist's personal information (defined as "information that identifies an individual, including an individual's ... name [and] address") from the Department of Motor Vehicles database, with specific exceptions. 18 U.S.C. § 2725(3); 18 U.S.C. § 2721(a). Among the Act's enumerated exceptions is § 2721(1)(b), which permits disclosure of personal information "for use by any government agency, including any ... law enforcement agency, in carrying out its functions." When personal information is released for a purpose not permitted under the Act, an individual whose information has been disclosed may bring suit in federal court against any person who has knowingly obtained, disclosed or used the information. 18 U.S.C. § 2724(a).

Plaintiff contends that defendant Kreitlow violated § 2721(a) when he obtained plaintiff's personal information from the Department of Motor Vehicles database for a purpose not permitted under the Act. When defendant Cator entered the Woodruff police station on September 15, 2004, he asked defendant Kreitlow to "run a license plate" for him. Defendant Cator told defendant Kreitlow he was planning to purchase the vehicle bearing the license plate and wanted to know whether the vehicle was owned locally. Plaintiff contends that defendant Kreitlow complied with defendant Cator's request for the sole purpose of determining whether plaintiff was "a local guy" and that in doing so defendant Kreitlow was not carrying out a law enforcement function. Therefore, plaintiff contends that defendant Kreitlow violated the Act and is liable under § 2724(a).

*3 In support of his position, plaintiff cites *Margan v. Niles*, 250 F.Supp.2d (N.D.N.Y.2003). In *Margan*, plaintiffs brought a lawsuit under the Driver's Privacy Protection Act against a police officer and the town that employed him, alleging that the officer knowingly obtained the plaintiffs' personal information from the Department of Motor Vehicles database and disclosed it to his friends, who used the information

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2240955 (W.D.Wis.)
**(Cite as: 2005 WL 2240955 (W.D.Wis.))**

to harass the plaintiffs. *Id.* at 66-67. Plaintiff argues that, like Margan, defendant Kreitlow obtained personal information for a non-law enforcement purpose and is liable for the violation.

Defendants Kreitlow and Town of Woodruff admit that defendant Kreitlow obtained plaintiff's personal information but they deny that defendant Kreitlow violated the Act. Instead, they argue that defendant Kreitlow obtained the information in the course of a law enforcement investigation as permitted by § 2721(b)(1). They point out that defendant Kreitlow was on duty as a police officer at the time he obtained the information, he believed defendant Cator had been involved in a prior police investigation, he did not disclose any of plaintiff's personal information to defendant Cator and he directed other police officers not to disclose plaintiff's personal information to anyone who requested it. Defendants contend that it was defendant Kreitlow's duty to investigate what he regarded as suspicious behavior on the part of defendant Cator and that he obtained plaintiff's personal information while performing a legitimate law enforcement function.

Although the parties agree on the material facts in this case, they dispute the inferences to be drawn from those facts. When deciding a motion for summary judgment, I must draw all reasonable inferences in favor of non-moving party. *Butera v. Cottey,* 285 F.3d 601, 605 (7th Cir.2002). Summary judgment is inappropriate if evidence could lead a reasonable jury to return a verdict in favor of plaintiff. *Payne v. Pauley,* 337 F.3d 767, 770 (7th Cir.2003).

When defendant Cator entered the police station on September 20, 2004, it was against police department policy to make available to the general public information from motor vehicle records. Yet when defendant Cator asked defendant Kreitlow to "run a license plate" for him, defendant Kreitlow did so. Defendant Kreitlow obtained plaintiff's personal information from the Department of Motor Vehicles database and informed defendant Cator that the vehicle owner was "a local guy." From these undisputed facts, a jury could reasonably infer that defendant Kreitlow obtained plaintiff's personal information from the Department of Motor Vehicles for a non-law enforcement purpose.

**B.** *Liability Under the DPPA*

Next, defendants contend that defendant Kreitlow is not liable to plaintiff under the Act even if he did obtain plaintiff's personal information for a non-law enforcement purpose. They assert that unless defendant Kreitlow actually disclosed or otherwise used plaintiff's personal information they cannot be liable for improperly obtaining it. "No harm, no foul" is their argument; because plaintiff does not claim that he was injured as a result of defendant Kreitlow improperly obtaining his personal information, defendants cannot be held liable for any technical violation of the Act. In support of their position, defendants cite *Russell v. Choicepoint Serv., Inc.,* 300 F.Supp.2d 450 (E.D.La.2004), as persuasive authority.

*\*4* In *Russell,* the plaintiff alleged that defendant Choicepoint Services, Inc. had improperly obtained personal information from her motor vehicle record with intent to redistribute it for an impermissible purpose. *Id.* at 451. Choicepoint obtained Russell's personal information under § 2721(c), which permits "authorized recipient[s] of personal information" to "resell or redisclose" that information for uses permitted under § 2621(b). *Id.* at 455. The court found that because Choicepoint was an authorized recipient of personal information within the meaning of § 2721(c), it could not be liable to Russell for improperly obtaining her information unless she alleged also that Choicepoint had used the information for a purpose not permitted under § 2621(b). *Id.* at 455, 457. In the absence of an allegation of improper use, the court presumed that Choicepoint had not improperly obtained Russell's personal information. *Id.* at 460-61. The court dismissed Russell's claim, stating that she could "not maintain a [Driver's Privacy Protection Act] claim for improper obtainment under 18 U.S.C. § 2724(a) without alleging an accompanying impermissible use." *Id.* at 455.

The present case is distinguishable from *Russell. Russell* involved a claim against a commercial entity authorized under § 2721(c) to resell personal information for a purpose permitted under § 2721(b). Defendant Kreitlow is not (and does not purport to be) an authorized recipient of information under § 2721(c). Rather, he contends that as a law enforcement officer he was permitted to obtain information under § 2721(b)(1). Because defendant Kreitlow was not presumptively authorized to obtain plaintiff's information, there is no reason to require plaintiff to

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2240955 (W.D.Wis.)
**(Cite as: 2005 WL 2240955 (W.D.Wis.))**

make an additional showing that defendant Kreitlow improperly used the information he obtained from the Department of Motor Vehicles database. The *Russell* court's requirement that a plaintiff allege both "improper obtainment" and "impermissible use" is relevant only in the context of a claim arising under § 2721(c). This is not such a case, and therefore *Russell* is not applicable.

This case is governed by the plain language of 18 U.S.C. § 2724(a), which authorizes civil remedies for violations of the DPPA. Section 2724(a) states:

A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.

The statute uses the disjunctive "or" to connect the terms "obtains," "discloses" and "uses." Therefore, each term must be given a separate meaning. *Reiter v. Sonotone Corp.*, 442 U.S. 330, 337, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979). Section 2724(a) makes a person liable when he knowingly obtains personal information from a motor vehicle record for a purpose not permitted under the Act regardless whether he proceeds to disclose or use the information.

**\*5** It is true that plaintiff has not alleged that he suffered injury as a *result* of defendant Kreitlow's obtaining his personal information. However, under the statute, improperly obtaining plaintiff's information *was* an injury. The Driver's Privacy Protection Act is designed to safeguard personal information. *See, e.g.,* 139 Cong. Rec. S15765 (1993) ("Easy access to personal information makes every driver in this nation vulnerable and infringes on their right to privacy.") (statement of Sen. Robb). If defendant Kreitlow obtained plaintiff's information in violation of the law, then he infringed upon plaintiff's privacy. The language of the statute protects not only against the wrongful dissemination of private information, but also against the wrongful acquisition of that information.

Resolution of this dispute turns on the answer to a single question: Was defendant Kreitlow carrying out a law enforcement function when he obtained plaintiff Parus's personal information from his motor vehi-

cle record? Because the parties dispute the answer to this question, I must deny defendants Kreitlow's and Town of Woodruff's motion for summary judgment.

### ORDER

IT IS ORDERED that the motion for summary judgment filed by defendants Clay Kreitlow and the Town of Woodruff is DENIED as to plaintiff William A. Parus's claim that defendant Kreitlow obtained plaintiff's protected personal information in violation of the Drivers' Privacy Protection Act of 1994.

W.D.Wis.,2005.
Parus v. Cator
Not Reported in F.Supp.2d, 2005 WL 2240955 (W.D.Wis.)

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT C

Nos. 08-41083, 08-41180 and No. 08-41232

# In the United States Court of Appeals for the Fifth Circuit

---

SHARON TAYLOR, ET AL.

*Plaintiffs - Appellants,*

v.

ACXIOM CORPORATION, ET AL.

*Defendants - Appellees.*

---

On Appeal from the United States District Court for the
Eastern District of Texas, in Civil Action Nos.
2:07-cv-01, 2:07-cv-13, 2:07-cv-14, 2:07-cv-17, 2:07-cv-18, 2:07-cv-410

---

## BRIEF OF THE STATE OF TEXAS AS AMICUS CURIAE IN SUPPORT OF DEFENDANTS

---

GREG ABBOTT
Attorney General of Texas

C. ANDREW WEBER
First Assistant Attorney General

JEFF L. ROSE
Deputy First Assistant
Attorney General

PAUL D. CARMONA
Chief, Consumer
Protection Division

JAMES C. HO
Solicitor General
State Bar No. 24052766

MICHAEL P. MURPHY
Assistant Solicitor General
State Bar No. 24051097

Office of the Attorney General
P.O. Box 12548 (MC-059)
Austin, Texas 78711-2548
[Tel.] (512) 936-1700
[Fax] (512) 474-2697

COUNSEL FOR THE STATE OF TEXAS

## TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Statement of Interest of Amicus Curiae . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.      The Judgment Should Be Affirmed Because the DPPA Imposes Liability Only if a Defendant Obtains, Discloses, or Uses Driver Records for a "Purpose Not Permitted" by the Act—and Combating Identity Theft Is a Valid Purpose Under the Act . . . . . . . 6

      A.      The Court Should Reject Plaintiffs' Bulk Obtainment Theory of Liability—A Defendant Does Not Obtain Driver Information for a "Purpose Not Permitted" by the Act Simply by Storing It for a *Future* (Rather Than Immediate) Valid Purpose . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      B.      The Court Should Reject Plaintiffs' Resale Theory of Liability—A Defendant Does Not Obtain Driver Information for a "Purpose Not Permitted" by the Act Simply by Obtaining It *on Behalf of a Customer* for a Valid Purpose . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

II.     Texas Law Authorizes Bulk Obtainment and Resale of Personal Driver Records, Subject to Restrictions to Prevent Misuse . . . . . . . 13

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## TABLE OF AUTHORITIES

**Cases:**

*Queensboro Farms Products, Inc. v. Wickard,*
     137 F.2d 969 (2nd Cir. 1943) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Langford,*
     688 F.2d 1088 (7th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**Statutes, Rules and Constitutional Provisions:**

18 U.S.C. § 2721(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

18 U.S.C. § 2721(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 2721(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 6-8, 11, 12

18 U.S.C. § 2721(b)(12) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

18 U.S.C. § 2721(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 13

18 U.S.C. § 2722(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

18 U.S.C. § 2723(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 16

18 U.S.C. § 2724(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-9, 12, 13

**Other Authorities:**

37 TEX. ADMIN. CODE § 15.141 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

37 TEX. ADMIN. CODE § 15.141(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

iii

37 TEX. ADMIN. CODE § 15.142 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

37 TEX. ADMIN. CODE § 15.142(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

37 TEX. ADMIN. CODE § 15.143(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

TEX. BUS. & COM. CODE § 521.052(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

TEX. BUS. & COM. CODE § 521.052(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

TEX. BUS. & COM. CODE § 521.151 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

TEX. TRANSP. CODE § 730.007(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

TEX. TRANSP. CODE § 730.012 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

TEX. TRANSP. CODE § 730.015 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

http://www.oag.state.tx.us/consumer/identity_theft.shtml . . . . . . . . . . . . . . . . . . 2

http://www.texasfightsidtheft.gov/ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

iv

Nos. 08-41083, 08-41180 and No. 08-41232

# In the United States Court of Appeals for the Fifth Circuit

---

SHARON TAYLOR, ET AL.

*Plaintiffs - Appellants,*

v.

ACXIOM CORPORATION, ET AL.

*Defendants - Appellees.*

---

On Appeal from the United States District Court for the
Eastern District of Texas, in Civil Action
Nos. 2:07-cv-01, 2:07-cv-13, 2:07-cv-14, 2:07-cv-17, 2:07-cv-18, 2:07-cv-410

---

### BRIEF OF THE STATE OF TEXAS AS AMICUS CURIAE IN SUPPORT OF DEFENDANTS

---

### STATEMENT OF INTEREST OF AMICUS CURIAE

The State of Texas has multiple interests in this matter. To begin with, Plaintiffs are asking this Court to impose severe civil liability on the use of personal information contained in driver license records held by the Texas Department of Public Safety—information that, properly used, can be a highly effective tool in the fight against identity theft, an important priority for the State of Texas.

Identity theft costs Texans millions of dollars each year. The Texas Attorney General's office is engaged in substantial efforts to protect honest consumers from the scourge of identity theft.[1] And as Congress recognized in enacting the Driver's Privacy Protection Act, cooperation between government and the private sector is needed to combat identity theft effectively, 18 U.S.C. § 2721(b)(3)—after all, there are far too many private transactions for government alone to police.

To construe the DPPA to hamstring cooperation between government and private industry would not just thwart the important policy objectives of the State of Texas in detecting and preventing identity theft. It would also expose the State to potential civil penalties under the Act. 18 U.S.C. § 2723(b).

The State's interest in this case extends beyond fighting identity theft. As with other law enforcement agencies across the country, Texas itself uses personal driver information compiled and repackaged by private resellers into a convenient format (typically in combination with other databases nationwide) to help track down suspects, witnesses, and other persons of interest, and to achieve other important law enforcement objectives. 18 U.S.C. § 2721(b)(1). For example, the Attorney General's Office routinely uses national databases provided by private resellers to

---

[1] *See generally* http://www.oag.state.tx.us/consumer/identity_theft.shtml; http://www.texasfightsidtheft.gov/.

2

track down individuals who are delinquent in their child-support payments, as well as to help locate suspects in the course of conducting consumer protection and criminal investigations. Plaintiffs' theory of liability would not just drive these resellers out of business—it would eliminate a valuable tool of law enforcement.

Accordingly, the State of Texas files this amicus brief to protect its efforts to detect and prevent identity theft, to avoid the improper assessment of civil penalties, and to achieve other important law enforcement objectives. The State agrees with Defendants' interpretation of the DPPA, but offers here an even simpler textual basis for defending the conduct challenged in this case.

### ARGUMENT

Any information can be used either for good or for ill, and the Driver's Privacy Protection Act reflects this practical reality. On the one hand, Congress enacted the DPPA in order to forbid injurious uses of personal information held by state motor vehicle departments—in particular, to prevent criminals from accessing driver information in order to identify and locate potential victims, and to stop marketing agencies from engaging in unwanted commercial solicitations. But it is also undisputed that the DPPA specifically authorizes the use of personal driver information to further various socially worthy causes—including working with businesses to protect consumers by combating identity fraud. The DPPA expressly

3

authorizes businesses to access personal driver information in order to "verify the accuracy of personal information" submitted by consumers and to "obtain the correct information . . . for the purposes of preventing fraud." 18 U.S.C. § 2721(b)(3).

Plaintiffs do not dispute the substantial societal value that flows from allowing businesses to access personal driver information to combat identity theft. They dispute only the format that such information may take. But this dispute is not only legally meritless—it also has enormous negative practical consequences for the fight against identity theft.

In effect, Plaintiffs contend that government may provide, and businesses may obtain, personal driver information to detect and prevent identity theft—but only in the least convenient format possible. According to Plaintiffs, businesses may examine individual records only on a case-by-case basis, and only when an immediate need arises. They put forth this interpretation by stringing together textual inferences from various provisions of the DPPA.

But their approach is not only unsupported by text—it also eliminates the most convenient and effective format for accessing personal driver information in order to detect identity theft, in clear conflict with a core purpose of the Act. For example, businesses that wish to obtain instant verification of consumer identification cannot simply obtain individual driver records one at a time as a specific need arises—that

4

would be impractical and untimely for business, and burdensome and costly for government. To achieve the benefits of instant verification, businesses must have, and states must provide, access to the entire database all at once. Yet Plaintiffs contend that Congress somehow intended to criminalize such practices, and to impose punishing civil liability on businesses for doing nothing more than working with government to obtain the information in the most convenient and practical format available for preventing identity theft.

Plaintiffs' interpretation of the DPPA is impractical in the extreme, and nothing in the text of the Act compels it. To the contrary, as Defendants have comprehensively documented, the text, legislative history, and purpose of the DPPA all point in favor of permitting the use of driver information in a convenient format to combat identity theft, an interpretation that is further bolstered by the rule of lenity.

The State of Texas agrees with Defendants' legal analysis. Rather than duplicate their brief, the State presents an additional, even simpler textual basis for affirming the judgment below: By Plaintiffs' own admission, the standard for civil liability is stated in 18 U.S.C. § 2724(a). That provision requires a showing that the defendant obtained, disclosed, or used personal driver information for a "purpose not permitted" by the DPPA. Plaintiffs do not dispute that all Defendants obtain personal driver information for the socially worthy and legally authorized purpose of detecting

and preventing identity theft pursuant to § 2721(b)(3). That concession is fatal to their claims.

For their part, Plaintiffs contend that some Defendants obtain and store personal driver information only to support some potential *future* effort to combat identity theft, while other Defendants do so only *on behalf of third party customers*. Neither contention is remarkable. And neither fact alters the conclusion that all Defendants are acting in order to further a "purpose" that is plainly permitted by the DPPA—to combat identity theft.

## I. THE JUDGMENT SHOULD BE AFFIRMED BECAUSE THE DPPA IMPOSES LIABILITY ONLY IF A DEFENDANT OBTAINS, DISCLOSES, OR USES DRIVER RECORDS FOR A "PURPOSE NOT PERMITTED" BY THE ACT—AND COMBATING IDENTITY THEFT IS A VALID PURPOSE UNDER THE ACT.

Plaintiffs expend much of their energy interpreting various provisions of the DPPA, as well as *dicta* from the rulings of other courts. But as they ultimately acknowledge, it is "[18 U.S.C.] § 2724(a) [that] provides the standard for civil liability" under the DPPA. Pltfs' Br. at 27. Section 2724(a) is the only provision of the DPPA that creates a civil action against defendants who wrongfully obtain or use personal driver information.

Nothing in the civil liability provision of the DPPA prohibits businesses from obtaining driver information and storing it for a valid use in the future (and thus not

6

using it until the need arises). Nor does it prohibit obtaining such information for the purpose of assisting third parties to achieve valid objectives. The provision only prohibits businesses from obtaining personal driver information for a "purpose not permitted" by the DPPA. 18 U.S.C. § 2724(a). *See also* Pltfs' Br. at 28 (same).

Plaintiffs do not deny that Defendants' ultimate "purpose" in obtaining personal driver information is to combat identity theft, as expressly authorized by the DPPA. Plaintiffs simply contend that this otherwise valid purpose is limited to either future use or to use by a third party. Neither contention, however, alters the fact that Defendants do not obtain personal driver information for a "purpose not permitted" by the DPPA.

> **A.** **The Court Should Reject Plaintiffs' Bulk Obtainment Theory of Liability—A Defendant Does Not Obtain Driver Information for a "Purpose Not Permitted" by the Act Simply by Storing It for a *Future* (Rather Than Immediate) Valid Purpose.**

Plaintiffs do not deny that those Defendants who wish to use personal driver information themselves (so-called "Non-Sellers") intend to do so in order to combat identity theft, as the DPPA expressly contemplates. The Act expressly allows disclosure of personal driver information:

> [f]or use in the normal course of business by a legitimate business or its agents, employees, or contractors, but only (A) to verify the accuracy of personal information submitted by the individual to the business or its agents, employees, or contractors, and (B) if such information as so

7

> submitted is not correct or is no longer correct, to obtain the correct
> information, but only for the purpose of preventing fraud by, pursuing
> legal remedies against, or recovering on a debt or security interest
> against, the individual.

18 U.S.C. § 2721(b)(3).

Although Plaintiffs do not dispute that Non-Sellers' ultimate purpose in obtaining such information falls well within this authorization, they argue that Non-Sellers do not expect to achieve this purpose in the immediate future with respect to each and every individual record obtained. In their words, "Plaintiffs' stated violations of the DPPA by Non-Sellers consisted of the fact that personal information from Plaintiffs' motor vehicle records were obtained by Non-Sellers for an impermissible purpose—'to save [themselves] time and/or money by not having to go back to the State of Texas each time [they] need additional information' and 'to avoid the inconvenience of having to go to the State each time [they] needed an additional customers' information.'" Pltfs' Br. at 28.

Plaintiffs' interpretation is impractical, contradicts Congressional intention, and is unsupported by the text of the DPPA. As they concede, the standard for civil liability under the DPPA is outlined in 18 U.S.C. § 2724(a), which imposes liability only if a defendant obtains information for a "purpose not permitted" by the Act. And as noted, Plaintiffs do not deny that the end use intended by Non-Sellers is to combat

8

identity theft. The fact that a Non-Seller's purpose may not be realized until some future unknown date in no way undermines the validity or sincerity of that purpose.

The biggest difficulty with Plaintiffs' theory of liability is that it requires a strange and cramped understanding of the term "purpose" under 18 U.S.C. § 2724(a). Consider the following analogy: Under Plaintiffs' approach, a person who buys a set of legal reporters does not do so for the "purpose" of reading the case law of a particular jurisdiction—unless the person plans to read the entire series immediately and all in one sitting. According to Plaintiffs, one who places those reporters on a bookshelf for future reading does not purchase those reporters for the "purpose" of reading them, and is instead guilty of acting in furtherance of some other purpose. There is no reason to impute to Congress such a strange and unexpected definition of "purpose." By the same token, a person who buys a box of chocolates does not do so for the "purpose" of eating them, unless the person eats them right away and all at once. That too is absurd. *Cf. United States v. Langford*, 688 F.2d 1088, 1096 (7th Cir. 1982) (interpreting federal law prohibiting the mailing of obscene materials "for the purpose of sale or distribution for sale" to "encompass[] and prohibit[] any future plan or scheme . . . to sell or distribute the obscene prints for sale").

For their part, Plaintiffs seem to argue that, although Defendants' *ultimate* "purpose" may be to combat identity theft, they also have an interim purpose to

9

achieve "convenience" or cost savings. But that theory proves too much. If a business can violate the DPPA simply by obtaining information in order to improve consumer or business convenience or to reduce costs, then every business that uses a driver record in the course of ordinary business would violate the DPPA. After all, any business could (in theory) assemble its own private database of consumer information—an expensive and time-consuming endeavor. By avoiding that effort—and by relying instead on government records—businesses save significant time and money and thereby increase convenience for themselves and for the consumers they serve. In sum, accepting Plaintiffs' "convenience" and "cost savings" theory of business "purpose" would, taken to its logical conclusion, effectively nullify the ability of any business to access any driver record to combat identity theft—including activities that Plaintiffs themselves say they would allow: Even a business that obtains personal driver information only on a case-by-case basis still saves itself from having to develop that specific information on its own.

Plaintiffs also contend that the DPPA elsewhere authorizes the "use" of personal driver information for "bulk distribution for surveys, marketing or solicitations," but only "if the State has obtained the express consent of the person to whom such personal information pertains." 18 U.S.C. § 2721(b)(12). Because no such express consent has occurred here, Plaintiffs contend that no "bulk distribution"

of driver records is authorized by the Act. But this argument conflates use with purpose. No business wishing to prevent identity theft actually *uses* driver information in "bulk"—rather, businesses simply confirm the validity of individual commercial transactions on a case-by-case basis. But that does not change the fact that the *purpose* of obtaining the entire driver database is to combat identity theft pursuant to 18 U.S.C. § 2721(b)(3).

> **B.  The Court Should Reject Plaintiffs' Resale Theory of Liability—A Defendant Does Not Obtain Driver Information for a "Purpose Not Permitted" by the Act Simply by Obtaining It *on Behalf of a Customer* for a Valid Purpose.**

Separately, Plaintiffs seek to impose civil liability on those Defendants who compile and repackage personal driver information into a convenient, more easily searchable format (typically in combination with other databases nationwide) for resale to business customers who wish to combat identity theft (so-called "Resellers"). This contention is meritless. Indeed, the DPPA expressly authorizes the resale of personal driver information. 18 U.S.C. § 2721(c).

Plaintiffs theorize that the DPPA permits such resale, but only if the Reseller first uses the information itself. Notably, Plaintiffs do not explain what possible Congressional objective such a "first use" requirement would achieve. They point to no social ill that would result when a business chooses to offer the benefits of

11

enhanced information technology to the area of government records. They simply contend that "Resellers were in violation of the DPPA because they impermissibly obtained Plaintiffs' personal information for the purpose of reselling the data to other parties when they were not themselves 'users' of the information." Pltfs' Br. at 35. They note that § 2721(c) applies only to "authorized recipients," and they argue that this term covers only those Resellers who first use the information themselves as authorized under § 2721(b).

Once again, the civil liability standard in 18 U.S.C. § 2724(a) (which requires a showing that Defendants acted out of a "purpose not permitted" by the Act) provides the simplest answer: The "purpose" of Resellers is to help their third-party customers detect and prevent identity theft, as permitted by the DPPA. Nothing in § 2724(a) forbids a person from obtaining personal driver information on behalf of a third-party customer for the "purpose" of helping that customer achieve its objectives. The DPPA expressly authorizes a person to obtain personal driver information "[f]or use in the normal course of business by a legitimate business or its agents, employees, or contractors . . . to verify the accuracy of personal information." 18 U.S.C. § 2721(b)(3). A business that obtains personal driver information for the purpose of achieving this objective is no less sincere just because it is acting on behalf of another "legitimate business." To continue the earlier metaphor, a law

12

librarian may purchase and store a set of legal reporters so that those reporters can be read by others. The "purpose" served by the legal reporters is not altered just because the law librarian is acting on behalf of the lawyers for whom he or she works. *Cf. Queensboro Farms Products, Inc. v. Wickard*, 137 F.2d 969, 976 (2nd Cir. 1943) ("we take 'purpose' to mean that the handler's use may . . . be determined by reference to the use made by the handler's purchaser or by some subsequent purchaser").

Faithful application of the "purpose not permitted" standard of 18 U.S.C. § 2724(a) also explains why Plaintiffs' resort to 18 U.S.C. § 2722(a) is of no help to their cause. *See* Pltfs' Br. at 27. Section 2724(a) is the only provision of the DPPA that imposes civil liability. It applies equally to *any* defendant—whether it is a Reseller acting under § 2721(c) or a Non-Seller acting under § 2721(b) or § 2722(a)—who "obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted" by the DPPA. 18 U.S.C. § 2724(a).

## II. TEXAS LAW AUTHORIZES BULK OBTAINMENT AND RESALE OF PERSONAL DRIVER RECORDS, SUBJECT TO RESTRICTIONS TO PREVENT MISUSE.

As contemplated by the DPPA, Texas law permits the bulk obtainment and resale of drivers license records, subject to a number of restrictions designed to prevent the diversion of such records for unauthorized use.

13

Any requestor must submit a written application documenting (1) the identity of the requestor, including all Internet addresses used by the requestor, (2) the nature of the requestor's business practices, (3) a detailed explanation of all intended uses of the requested information, (4) copies of any agreements between the requestor and any third parties for the release of personal driver information, and (5) any material provided to third parties regarding the authorized use of such information. *See* TEX. TRANSP. CODE §§ 730.007(a), 730.012; 37 TEX. ADMIN. CODE § 15.142. The Texas Department of Public Safety will not authorize the release of personal driver information to a requestor if "any of the information is incomplete, inaccurate, or does not meet statutory requirements." 37 TEX. ADMIN. CODE § 15.142(d). A requestor who misrepresents his identity or makes a false statement on the application is subject to criminal penalties. TEX. TRANSP. CODE § 730.015.

In the event that DPS approves an application for personal driver information, the requestor must enter into a written contract with DPS, 37 TEX. ADMIN. CODE § 15.141, requiring among other things a certification of permissible uses and a commitment that the information "shall not be used to engage in any method, act, or practice which is unfair or deceptive, nor shall they be used for marketing or solicitations, or surveys not authorized by law." Agreement For Purchasing Driver Record Information In Bulk, ¶ 5, App. A. The contract also conditions access to DPS

14

records on strict compliance with the DPPA as well as State law concerning the resale and disclosure of personal information. *Id.* at ¶¶ 2, 7, 8. Resellers are also required to "ensure that any party to which they release the driver record information" complies with federal and state law. 37 TEX. ADMIN. CODE § 15.143(a). Any violation of the agreement results in denial of future access to personal driver information. *Id.* at § 15.141(c).

More generally, Texas law protects consumers by requiring any business that possesses any personal information (including but not limited to information from driver records) to maintain the security of that information. Businesses must "implement and maintain reasonable procedures, including taking any appropriate corrective action, to protect from unlawful use or disclosure any sensitive personal information [including name and driver's license number], collected or maintained by the business in the regular course of business." TEX. BUS. & COM. CODE § 521.052(a). Disposal of personal information is also strictly regulated. A business that no longer wishes to retain personal information must arrange for its secure destruction by shredding, erasing, or modifying the information such that it is unreadable. *Id.* § 521.052(b). Violations are subject to civil prosecution by the Attorney General, with penalties ranging between $2,000 and $50,000 per violation. *Id.* at § 521.151.

15

* * *

As the DPPA plainly recognizes, personal information contained in a motor vehicle record can be used either for good or for ill. Congress understood that personal driver information can be an essential tool in the fight against identity theft, as well as in the achievement of other important law enforcement objectives, and expressly authorized such uses accordingly. That authorization is not diminished just because a business obtains personal driver information for a future effort against identity theft, or on behalf of a third-party customer who wishes to detect and prevent acts of identity theft. Plaintiffs' contention to the contrary falls far short of the DPPA standard for civil liability, which applies only where a defendant obtains, discloses, or uses such information for a "purpose not permitted" by the Act.[2]

## CONCLUSION

The judgment of the district court should be affirmed.

---

[2]    The standard for imposing civil penalties on government entities under the DPPA is, unsurprisingly, even more restrictive—triggered only where an agency engages in a "policy or practice of substantial noncompliance" under the Act. 18 U.S.C. § 2723(b). Accordingly, if businesses are not liable as Plaintiffs allege, then a government agency *a fortiori* cannot be—as confirmed by the U.S. Justice Department advisory letter cited by Defendants.

16

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

C. ANDREW WEBER
First Assistant Attorney General

JEFF L. ROSE
Deputy First Assistant Attorney General

JAMES C. HO
Solicitor General
State Bar No. 24052766

MICHAEL P. MURPHY
Assistant Solicitor General
State Bar No. 24051097

PAUL D. CARMONA
Chief, Consumer Protection Division

P.O. Box 12548, MC-059
Austin, Texas 78711-2548
[Tel.] 512/936-1700
[Fax] 512/474-2697

COUNSEL FOR THE STATE OF TEXAS

17

### CERTIFICATE OF SERVICE

The undersigned counsel does hereby certify that two true and correct copies of the Brief of Amicus Curiae, along with a computer readable disk copy of the brief, was caused to be served via Federal Express on May 7, 2009 to:

Jeremy R. Wilson
THE COREA FIRM, PLLC
The Republic Center
325 N. St. Paul Street, Suite 4150
Dallas, Texas 75201
(214) 953-3900
(214) 953-3901 (fax)
and
Andy Tindel
PROVOST & UMPHREY LAW FIRM
112 E. Line Street, Suite 304
Tyler, Texas 75702
(903) 596-0900
(903) 596-0909 (fax)
**Counsel for Plaintiffs/Appellants**
**Sharon Taylor, et al.**

Chad M. Pinson
BAKER BOTTS L.L.P.
2001 Ross Avenue
Dallas, Texas 75201-2980
(214) 953-6500
(713) 953-6503 (fax)
and
Aaron M. Streett
Elizabeth E. Baker
BAKER BOTTS L.L.P.
910 Louisiana St.
Houston, Texas 77002
(713) 229-1234
(713) 229-1522 (fax)
**Counsel for American Driving Records, Inc., d/b/a First Advantage ADR, a/k/a Agency Records, Inc., Southwestern Bell Telephone, L.P. d/b/a Southwestern Bell Telephone Company, a Texas Limited Partnership, Safeway Inc., Ltd., Background Information Systems, Inc., HEB Grocery Company, LP, RealPage, Inc.**

18

Mark J. Dyer
Stephen D. Henninger
MARTIN, DISIERE, JEFFERSON &
WISDOM, L.L.P.
900 Jackson Street, Suite 710
Dallas, Texas 75202
(214) 420-5500
(214) 420-5501 (fax)
**Counsel for FedChex, L.L.C.**

Larry F. York
MCGINNIS, LOCHRIDGE &
KILGORE, L.L.P.
600 Congress Ave., Suite 2100
Austin, Texas 78701
(512) 495-6075
(512) 505-6375 (fax)
**Counsel for ACS State & Local
Solutions, Inc.**

Gregory R. Ave
Jason Wren
WALTERS BALIDO & CRAIN, L.L.P.
900 Jackson Street, Suite 600
Dallas, Texas 75202
(214) 749-4805
(214) 760-1670 (fax)
**Counsel for Spartan Insurance
Company and for Household Drivers
Report, Inc., d/b/a HDR, Inc.**

Wallace M. Smith
SMITH, ROBERTSON, ELLIOTT,
GLEN, KLEIN & BELL, L.L.P.
221 West Sixth Street, Suite 1100
Austin, Texas 78701
(512) 225-5800
(512) 225-5838 (fax)
**Counsel for Gila Corporation d/b/a
Municipal Services Bureau**

Charles L. Perry
ANDREWS KURTH LLP
1717 Main Street, Suite 3700
Dallas, Texas 75201
(214) 659-4681
(214) 659-4894 (fax)
**Counsel for Insurance Technologies
Corporation**

David M. Walsh IV
CHAMBLEE & RYAN, P.C.
2777 Stemmons Freeway, Suite 1157
Dallas, Texas 75207
(214) 905-2003
(214) 905-1213 (fax)
**Counsel for Hawkeye Insurance
Services**

19

Jonathan R. Donellan
Ravi V. Sitwala
THE HEARST CORPORATION
Office of General Counsel
300 West 57 Street, 40th Floor
New York, New York 10019
(212) 649-2000
        and
William W. Ogden
OGDEN, GIBSON, BROOCKS &
LONGORIA, L.L.P.
1900 Pennzoil South Tower
711 Louisiana
Houston, Texas 77002
(713) 844-3000
(713) 844-3030 (fax)
**Counsel for The Hearst Corporation
d/b/a Houston Chronicle**

Stephen S. Maris
Melissa J. Swindle
HUNTON & WILLIAMS LLP
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202-2799
(214) 468-3300
(214) 468-3599 (fax)
**Counsel for American Student List,
LLC**

Michael Lawrence Bernoudy, Jr.
THE BERNOUDY LAW FIRM
202 S. College Street
Marshall, Texas 75670
(903) 935-4223
(903) 935-4228 (fax)
**Counsel for Coe Information
Publishers, Inc.**

Robert L. Ramey
Jill D. Schein
RAMEY, CHANDLER, MCKINLEY &
ZITO, P.C.
750 Bering Drive, Suite 600
Houston, Texas 77057
(713) 266-0074
(713) 266-1064 (fax)
**Counsel for Source Data, Inc.**

Eric P. Chenoweth
YETTER WARDEN & COLEMAN,
L.L.P.
909 Fannin, Suite 3600
Houston, Texas 77010
(713) 632-8000
(713) 632-8002 (fax)
**Counsel for Reliant Energy, Inc.**

Randy Burton
BURLESON COOKE, LLP
711 Louisiana, Suite 1701
Houston, Texas 77002
(713) 358-1762
(713) 358-1721 (fax)
**Counsel for Driver Training
Associates, Inc. d/b/a
Ticketschool.com**

Robert M. Strasnick
ANDREWS & UPDEGRAPH, P.C.
70 Washington Street; Suite 212
Salem, Massachusetts 01970
(978) 740-6633
**Counsel for Jon Latorella, d/b/a
Locateplus Holding Corporation**

20

Richard N. Dodson
DODSON & DODSON
2005 Moores Lane
Post Office Box 1877
Texarkana, Texas 75503
(903) 794-3121
(903) 793-4801 (fax)
**Counsel for Texas Motor Transportation Association**

Stayton L. Worthington
David P. Henry
COGHLAN CROWSON, LLP
Suite 211, The Energy Centre
1127 Judson Road
P.O. Box 2665
Longview, Texas 75606-2665
(903) 758-5543
(903) 753-6989 (fax)
**Counsel for American Electric Power Service Corporation**

Donald R. Taylor
Steven D. Urban
TAYLOR DUNHAM AND BURGESS LLP
301 Congress Avenue, Suite 1050
Austin, Texas 78701
(512) 473-2257
(512) 478-4409 (fax)
**Counsel for United Teacher Associates Insurance Company**

Richard M. Abernathy
ABERNATHY ROEDER BOYD & JOPLIN, P.C.
1700 Redbud Blvd., Suite 300
McKinney, Texas 75069
(214) 544-4000
(214) 544-4040 (fax)
**Counsel for Tenant Tracker, Inc.**

Joel E. Geary
VINCENT LOPEZ SERAFINO JENEVEIN, P.C.
2001 Bryan Street, Suite 2000
Dallas, Texas 75201-3073
(214) 979-7451
(214) 979-7402
**Counsel for JI Specialty Services, Inc.**

Michael P. Heiskell
JOHNSON, VAUGHN, & HEISKELL
5601 Bridge Street, Suite 220
Fort Worth, Texas 76112
(817) 457-2999
(817) 496-1102 (fax)
**Counsel for National Statistical Services Corporation**

21

Robin L. Harrison
CAMPBELL HARRISON & DAGLEY
L.L.P.
4000 Two Houston Center
909 Fannin, Suite 4000
Houston, Texas 77010
(713) 752-2332
(713) 752-2330 (fax)
**Counsel for ADP Screening and
Selection Services, Inc. a/k/a Avert, Inc.**

Hastings L. Hanshaw
Collin D. Kennedy
HANSHAW KENNEDY, LLP
1125 Legacy Drive, Suite 250
Frisco, Texas 75034
(972) 731-6500
(972) 731-6555 (fax)
**Counsel for American Municipal
Services, Ltd.**

Douglas E. Koger
DOUGLAS E. KOGER
14090 Southwest Freeway, Suite 300
Sugar Land, Texas 77478
(281) 340-2050
(281) 340-2052 (fax)
**Counsel for Emaginenet Technologies,
Inc.**

Michael H. Collins
Thomas G. Yoxall
Kirsten M. Castañeda
LOCKE LORD BISSELL & LIDDELL
LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
(214) 740-8000
(214) 740-8800 (fax)
**Counsel for Globe Life And Accident
Insurance Company**

Dwight M. Francis
GARDERE WYNNE SEWELL LLP
1601 Elm Street, Suite 3000
Dallas, Texas 75201-4761
(214) 999-3000
(214) 999-4667 (fax)
**Counsel for Energy Future Holdings
f/k/a TXU Business Services
Company**

22

Larry D. Henry
John A. Burkhardt
BOONE, SMITH, DAVIS, HURST &
DICKMAN
500 Oneok Plaza
100 West 5th Street
Tulsa, Oklahoma 74103
(918) 597-0000
(918) 599-9317 (fax)
 and
Brendan C. Roth
THE ROTH FIRM
115 N. Wellington, Suite 200
Marshall, Texas 75670
(903) 935-1665
(903) 935-1797 (fax)
**Counsel for Softech International, Inc.**

J. Michael Dorman
Christopher Verducci
LOCKE LORD BISSELL & LIDDELL
LLP
600 Travis Street, Suite 3400
Houston, Texas 77002
(713) 226-1200
(713) 223-3717 (fax)
**Counsel for Defensive Driver Online,
Ltd.**

S. George Alfonso
THE LAW OFFICES OF S. GEORGE
ALFONSO
5340 Alpha Road
Dallas, Texas 75244
(972) 458-6800
(972) 458-6801 (fax)
**Counsel for ABC Data, Inc. d/b/a
UNICARD Systems, Inc. and Lee
Farish Computer Services, Inc.**

Jennifer Haltom Doan
Joshua R. Thane
HALTOM & DOAN
Crown Executive Center, Suite 100
6500 Summerhill Road
Texarkana, Texas 75503
(903) 255-1000
(903) 255-0800 (fax)
 and
Randall K. Miller
ARNOLD & PORTER LLP
1600 Tysons Boulevard, Suite 900
McLean, Virginia 22102
(703) 720-7030
(703) 720-7399 (fax)
**Counsel For Biometric Access
Company**

Brock C. Akers
PHILLIPS & AKERS, P.C.
3200 Phoenix Tower
3200 Southwest Freeway
Houston, Texas 77027
(713) 552-9595
(713) 552-0231 (fax)
**Counsel for Freeman Publishers, Inc.**

23

J. Richard Tubb
J. RICHARD TUBB, PLLC
Preston Commons West
8117 Preston Road, Suite 300
Dallas, Texas 75225
(214) 706-9234
(214) 706-9236 (fax)
**Counsel for Paradise Development, Inc.
d/b/a Drivesafe Defensive Driving and
Safety-USA Institute, LLC**

David J. White
GODWIN RONQUILLO PC
1201 Elm Street, Suite 1700
Dallas, Texas 75270
(214) 939-4400
(214) 527-3206 (fax)
**Counsel for Talbot Group, Inc.**

Jonathan Cuneo
Alexandra C. Warren
CUNEO, GILBERT & LADUCA LLP
507 C Street NE
Washington, DC 20002
(202) 789-3960
(202) 789-1813 (fax)
**Counsel for Aristotle International,
Inc.**

James W. Grau
Scott A. Whisler
GRAU KOEN, P.C.
2711 N. Haskell Avenue,
Suite 2000
Dallas, Texas 75204
(214) 521-4145
214) 521-4320 (fax)
and

Hal M. Browne
LAW OFFICES OF HAL BROWNE
6008 Fieldstone Drive
Dallas, Texas 75252
(469) 878-4742
(972) 930-0772 (fax)
**Counsel for Continueded.Com LLC,
d/b/a Idrivesafely.Com**

Brian C. Jobe
WIMER & JOBE
Two Galleria Tower
13455 Noel Road, Suite 1000
Dallas, Texas 75240
(972) 701-9066
(972) 701-9069 (fax)
**Counsel for Allied Resident/Employee
Screening Service, Inc.**

Marvin C. Moos
EBANKS TAYLOR HORNE, L.L.P.
1301 McKinney, Suite 2700
Houston, Texas 77010-3079
(713) 333-4500
(713) 333-4600 (fax)
**Counsel for Zebec Data Systems, Inc.
and Infonation, Inc.**

William W. Allen
GESS MATTINGLY & ATCHISON,
P.S.C.
201 West Short Street
Lexington, Kentucky 40507
(859) 252-9000
(859) 233-4269 (fax)
**Counsel for Cross-Sell, Inc.**

24

Gayla C. Crain
Fred Gaona III
SPENCER CRAIN CUBBAGE HEALY
& MCNAMARA, PLLC
1201 Elm Street, Suite 4100
Dallas, Texas 75270
(214) 290-0000
(214) 290-0099 (fax)
    and
Catherine Sison
FEDERATED RETAIL HOLDINGS,
INC.
611 Olive Street, 10th Floor
St. Louis, Missouri 63101
(314) 342-6715
(314) 342-3066 (fax)
**Counsel for Federated Retail Holdings,
Inc., f/k/a The May Department Stores
Company d/b/a Foley's**

Jeffrey R. Elkin
PORTER & HEDGES, L.L.P.
1000 Main Street, 36th Floor
Houston, Texas 77002
(713) 226-6617
(713) 226-6217 (fax)
**Counsel for PropertyInfo Corporation,
Successor by Merger to REI Data, Inc.**

Craig A. Haynes
THOMPSON & KNIGHT, LLP
One Arts Place
1722 Routh Street, Suite 1500
Dallas, Texas 75201
(214) 969-1700
(214) 969-1751 (fax)
**Counsel for LML Payment Systems
Corp.**

Paul M. Boyd
BOYD & BROWN, P.C.
1215 Pruitt Place
Tyler, Texas 75703
(903) 526-9000
(903) 526-9001 (fax)
**Counsel for Realty Computer
Solutions, Inc. d/b/a Real-Comp**

Roger D. Higgins
Daniel P. Buechler
THOMPSON, COE, COUSINS &
IRONS, L.L.P.
700 N. Pearl Street
Twenty-Fifth Floor
Dallas, Texas 75201-2832
(214) 871-8256
(214) 871-8209 (fax)
**Counsel for Texas Farm Bureau
Mutual Insurance Company**

T. Belew Ellis
T. BELEW ELLIS
P.O. Box 802
Marshall, Texas 75671-0802
(903) 938-0593
(903) 938-9062 (fax)
**Counsel for Marshall Systems
Technology, Inc.**

Walter J. Cicack
Karl E. Neudorfer
SEYFARTH SHAW LLP
700 Louisiana Street, Suite 3700
Houston, Texas 77002
(713) 225-2300
(713) 225-2340 (fax)
**Counsel for U.S. Interactive, Inc.**

25

John E. Collins
BURLESON, PATE & GIBSON
2414 N. Akard, Suite 700
Dallas, Texas 75201
(214) 871-4900
(214) 871-7543 (fax)
**Counsel for Urapi, Inc. and D.B. Stringfellow**

J. Stephen Hunnicutt
THE HUNNICUTT LAW FIRM
Two Hillcrest Green
12720 Hillcrest, Suite 750
Dallas, Texas 75230
(214) 361-6740
(214) 691-5099 (fax)
**Counsel for Dallas Computer Information Systems**

Mark W. Bayer
GARDERE WYNNE SEWELL LLP
1601 Elm Street, Suite 3000
Dallas, Texas 75201-4761
(214) 999-3000
(214) 999-4667 (fax)
**Counsel for ISO Claims Service, Inc. d/b/a Insurance Information Exchange**

Patrick Kelley
IRELAND, CARROLL & KELLEY, P.C.
6701 S. Broadway, Suite 500
Tyler, Texas 75703
(903) 561-1600
(903) 581-1071 (fax)
        and

Juan C. Enjamio
HUNTON & WILLIAMS LLP
1111 Brickell Ave., Suite 2500
Miami, Florida 33131
(305) 810-2500
(305) 810-2460 (fax)
**Counsel for Acxiom Corporation and Acxiom Risk Mitigation, Inc.**

David G. Russell
Jodi Emmert Zysek
PARKER HUDSON RAINER & DOBBS, LLP
1500 Marquis Two Tower
285 Peachtree Center Avenue, N.E.
Atlanta, Georgia 30303
(404) 523-5300
(404) 522-8409 (fax)
        and
Calvin Capshaw
Elizabeth L. DeRieux
CAPSHAW DERIEUX, LLP
Energy Centre
1127 Judson Road, Suite 220
P. O. Box 3999 (75606-3999)
Longview, Texas 75601-5157
(903) 236-9800
(903) 236-8787 (fax)
**Counsel for TeleCheckServices, Inc.**

J. Michael Walls
CARLTON FIELDS
4221 W. Boy Scout Blvd.,
Suite 1000
Tampa, Florida 33607
(813) 229-4257
(813) 229-4133 (fax)
        and
Alan N. Greenspan
JACKSON WALKER LLP
901 Main Street, Suite 6000
Dallas, Texas 75202
(214) 953-5912
(214) 661-6632 (fax)
**Counsel for Certegy Check Services, Inc.**

Kirk T. Florence
CROUCH & RAMEY, L.L.P.
1445 Ross Avenue, Suite 3600
Dallas, Texas 75202
(214) 922-7100
(214) 922-7101 (fax)
        and
Christopher M. Mason
NIXON PEABODY LLP
437 Madison Avenue
New York, New York 10022
(212) 940-3000
(212) 940-3111 (fax)
**Counsel for Carfax, Inc.**

_____
Michael P. Murphy

27

The undersigned counsel certifies that on May 7, 2009, the Brief of Amicus Curiae, 7 paper copies thereof, and one computer-readable disk copy in Adobe Portable Document Format, was dispatched to the clerk, as addressed below, via Federal Express:

Mr. Charles R. Fulbruge III, Clerk
U.S. Court of Appeals for the Fifth Circuit
600 Maestri Place
New Orleans, Louisiana 70130

Michael P. Murphy

## CERTIFICATE OF COMPLIANCE
### With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

[ X ]   this brief contains 3564 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

[ ]     this brief uses a monospaced typeface and contains [state the number of] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ]   this brief has been prepared in a proportionally spaced typeface using WordPerfect for Windows, version 12 in Times New Roman 14-point type face, or

[ ]     this brief has been prepared in a monospaced typeface using [state name and version of word processing program] with [state number of characters per inch and name of type style].

Michael P. Murphy
Attorney for the State of Texas

Dated: May 7, 2009

# APPENDIX

The State of Texas
County of Travis

AGREEMENT FOR PURCHASING DRIVER RECORD INFORMATION IN BULK

Parties. The agreement is made between the Texas Department of Public Safety, 5805 N. Lamar, Austin, Texas 78752, herein after DPS, and

---
name
---

address
herein after Purchaser.

WHEREAS, Texas law authorizes DPS to sell driver and related records individually and in bulk for specified permissible purposes; and

WHEREAS, state and federal law, including the federal Driver Privacy Protection Act of 1994 (PL 103-322; 18 USC § 2721 et seq.) and Texas' driver privacy protection legislation of 1995 (Tex. Trans. Code §730) extend privacy protection to personal information maintained in the files of the state motor vehicle agencies such as the Texas DPS; and

WHEREAS, the Driver Privacy Protection Act of 1994, as amended by PL 106-69 (18 USC §2721, as amended), presently prohibits state motor vehicle agencies from selling personal information in bulk for purposes of marketing, solicitations, and certain surveys unless a state has first obtained express consent from each individual about whom listed personal information pertains, and

WHEREAS, the Texas State Legislature has refrained from enacting any express consent system for use in Texas; and

WHEREAS, Texas law requires each prospective purchaser of records in bulk, before receiving any records, to execute a written purchase agreement or contract containing such safeguards as DPS considers necessary or reasonable to ensure that all information and records purchased are used only for permissible purposes and that the rights of the individuals and DPS are protected; and

WHEREAS, the Purchaser, desires to purchase driver or related records, including personal information, from DPS,

IT IS AGREED, THEREFORE, that DPS shall sell and deliver to the Purchaser the driver records, subject to the following terms and conditions:

1. Definitions
   a. "Driver record" means a record that pertains to a motor vehicle operator or driver license or permit, or identification document issued by DPS.
   b. "Personal information" means information that identifies a person, including the driver identification number, name, date of birth, and address.

2. Certification of Permissible Use(s).

The Purchaser, by signing this agreement, hereby certifies compliance with all current provisions of the federal Driver Privacy Protection Act of 1994, as amended by PL 106-69 (18 USC §2721 et seq.), with applicable Texas driver privacy protection legislation, and with all other state and federal laws applicable to this agreement. The Purchaser further certifies that his/her/its use of the record and information purchased under this contract is for the following permissible purpose(s) only and for no others:

1

Initial all that apply.

———— 1. For use in connection with any matter of (a) motor vehicle or motor vehicle operator safety; (b) motor vehicle theft; (c) motor vehicle emissions; (d) motor vehicle product alterations, recalls, or advisories; (e) performance monitoring of motor vehicles or motor vehicle dealers by a motor vehicle manufacturer; or (f) removal of nonowner records from the original owner records of a motor vehicle manufacturer to carry out the purposes of the Automobile Information Disclosure Act, the Anti Car Theft Act of 1992, the Clean Air Act, and any other statute or regulation enacted or adopted under or in relation to a law included in the above.

———— 2. For use by a government agency in carrying out its functions or a private entity acting on behalf of a government agency in carrying out its functions.

———— 3. For use in connection with a matter of (a) motor vehicle or motor vehicle operator safety; (b) motor vehicle theft; (c) motor vehicle product alterations, recalls, or advisories; (d) performance monitoring of motor vehicles, motor vehicle parts, or motor vehicle dealers; (e) motor vehicle market research activities, including survey research; or (f) removal of nonowner records from the original owner records of motor vehicle manufacturers.

———— 4. For use in the normal course of business by a legitimate business or an authorized agent of the business, but only to verify the accuracy of personal information submitted by the individual to the business or the authorized agent of the business and to obtain correct information if the submitted information is incorrect to prevent fraud by, pursuing a legal remedy against, or recovering on a debt or security interest against the individual.

———— 5. For use in conjunction with a civil, criminal, administrative, or arbitral proceeding in any court or government agency or before any self regulatory body, including service of process, investigation in anticipation of litigation, execution or enforcement of a judgment or order, or under an order of any court.

———— 6. For use in research or in producing statistical reports, but only if the personal information is not published, redisclosed, or used to contact any individual.

———— 7. For use by an insurer or insurance support organization, or by a self insured entity, or an authorized agent, of the entity, in connection with claims investigation activities, antifraud activities, rating or underwriting.

———— 8. For use in providing notice to an owner of a towed or impounded vehicle.

———— 9. For use by a licensed private investigator agency or licensed security service for a purpose permitted as stated on this page.

———— 10. For use by an employer or an authorized agent or insurer of the employer to obtain or verify information relating to a holder of a commercial driver's license that is required under 49 U.S.C. Chapter 313.

———— 11. For use in connection with the operation of a private toll transportation facility.

———— 12. For use by a consumer-reporting agency as defined by the Fair Credit Reporting Act (15 U.S.C.§1681 et seq.) for a purpose permitted under the Act.

———— 13. For any other purpose specifically authorized by law that relates to the operation of a motor vehicle or to public safety. Please provide statutory authority _____

_____

2

——— 14. For use in the preventing, detecting, or protecting against identity theft or other acts of fraud. DPS prior to release of personal information may require additional information.

It is expressly understood that the Purchaser may sell or furnish personal information obtained under this agreement to third parties, subject to the limitations herein, but may not sell or furnish personal information for any purpose or use that is not permitted by federal or state law. The Purchaser understands that he/she/it may not furnish personal information purchased under this agreement to any third party unless the third party certifies that his/her/its intended use of the information is for a use permitted under this contract and state and federal law. In addition the Purchaser agrees to the statutory restrictions on selling and/or redisclosing the information obtained from DPS. The Purchaser shall not sell or redisclose the personal information in the identical or substantially identical format the information was disclosed to the Purchaser. The Purchaser further understands that violating this paragraph is grounds for immediate termination of this agreement under Paragraph 13.

3. Fees and Payments.

In consideration of receiving records and information purchased in bulk, the Purchaser agrees to pay to DPS the applicable statutory charge. At DPS request, the Purchaser shall pay to DPS, prior to transmittal of the records and information in bulk, a deposit in an amount determined by DPS to be the approximate charge and shall pay any balance due upon receipt of billing. If this method of payment is requested, DPS shall refund any overpayment, pursuant to state procedures, following delivery of the copies. If DPS does not request a deposit, the Purchaser shall remit payment immediately upon receipt of billing but shall not be considered in default for a period of thirty (30) days following receipt of billing. The Purchaser acknowledges and agrees that all postage and/or other shipping charges, as well as shipping media (e.g. magnetic tapes) shall be the Purchaser's responsibility and may be included in the billing.

4. Acknowledgement and Disclaimer.

The Purchaser acknowledges that DPS is furnishing records and information "as is" and it makes no representation or warranty as to the accuracy of any record or the information furnished. DPS expressly disclaims responsibility for any failure to deliver records or information in a timely manner, or at all, in the event of staff shortages, failures of appropriations, breakdowns of equipment, compliance with new or amended laws, acts of authority exercised by a public official, acts of God, or other circumstances which may delay or preclude furnishing records and information in a timely fashion. If records and information are not furnished and the Purchaser has remitted a deposit, DPS shall refund the deposit. DPS has no further responsibility or liability to the Purchaser with respect to undelivered records and information and has no liability or responsibility whatsoever for delayed records and information.

5. Consumer Protection.

The Purchaser agrees that the records and information furnished under this agreement shall not be used to engage in any method, act, or practice which is unfair or deceptive, nor shall they be used for marketing or solicitations, or surveys not authorized by law.

6. Access to Information in Bulk.

The Purchaser agrees that no member of the public or any person outside the direct employ or control of the Purchaser shall be allowed direct access to records and information through the Purchaser under this agreement for any reason other than the Purchaser's intended and legitimate use of the records and information.

3

7. Record Creation and Retention.

If the Purchaser resells or re-discloses any of the information or records purchased under this agreement to a third party, the Purchaser agrees to create records identifying each such person or entity who obtained personal information from the Purchaser and the legally permissible purpose for which the record or information was obtained. The Purchaser shall retain the records of identification and purpose for a period of not less than five (5) years following transfer of the information and or records to the third party.

8. Provide Copies of Records and Notification of Release.

If the Purchaser resells or re-discloses any of the information or records purchased under this agreement to a third party, the Purchaser shall provide copies of those records identifying each person or entity who obtained personal information from the Purchaser and the permissible purpose for which it was obtained to DPS upon request. The Purchaser understands that DPS may exercise its reserved right to insert control records into bulk records and information furnished, as an independent means of identifying any entities to whom the Purchaser may have improperly resold or re-disclosed records and information under this agreement or if any inappropriate use has occurred. The Purchaser shall bear the expense of providing the copies of such records to DPS including any postage and/or shipping charges. The Purchaser will notify DPS of any inadvertent or unauthorized release of the Driver Record Information obtained under this contract within two days of when the Purchaser knows or should have known of such unauthorized or inadvertent release.

9. Assignability.

The Purchaser may not assign, license, or transfer any of its rights, duties, and obligations under this agreement without the prior written consent of DPS.

10. Incorporation of Other Documents.

This agreement incorporates by reference the document entitled the Purchaser's Information Form Attachment A to the Agreement for Purchasing Driver Record Information in Bulk, which provides DPS additional information about the Purchaser. With the exception to Attachment A, this agreement embodies the entire agreement between the Purchaser and DPS with relation to the transaction contemplated hereby, and there have been and are no other covenants, agreements, representations, warranties or restrictions between the parties other than those specifically set forth in the agreement.

11. Effective Date and Renewal.

This contract shall automatically renew on a yearly basis. However, either party may terminate this agreement upon thirty days written notice to the other party. Notice should be given to the contact person designated in Paragraph 17 of this contract. Notice is effective upon receipt or three days after deposit in the U. S. mail, whichever occurs first.

12. Cancellation.

Either party may cancel this agreement for any reason by giving the other party written notice of cancellation at least thirty (30) days prior to cancellation. If a party elects to cancel this agreement, all unfilled obligations, including the obligation to pay for copies received, shall remain in force.

13. Termination.

DPS may terminate this agreement in writing at any time for any reason. Without limiting the foregoing, DPS may immediately terminate this agreement, without notice for any violation of the terms of this contract or for any violation of any state or federal law or regulation relating to the information provided by DPS under this agreement. This includes but is not limited to failure to remit charges due in a timely fashion or for inappropriate use of data, such as use for marketing or solicitations. The Purchaser

4

acknowledges that if this agreement is terminated for cause, DPS may refuse to provide records and information in bulk.

14. Change of Status.

The Purchaser may terminate this contract in writing at any time. This agreement will automatically terminate if the Purchaser ceases to conduct business, if the Purchaser substantially changes the nature of its business, if the Purchaser sells its business, if there is a significant change in the ownership of the Purchaser, if the Purchaser ceases to qualify for the information under the permissible use(s) certified in Paragraph 2, or if the Purchaser dies. The Purchaser, its successor in interest, or its personal representative will immediately notify DPS in writing of any change in status that would implicate this paragraph. If the contract is terminated under this paragraph, the Purchaser's successor in interest will be eligible to apply for and execute a new contract.

15. Amendments.

The Purchaser acknowledges that DPS may amend the terms and conditions of this agreement from time to time in order to accommodate changes in the records or information furnished under this agreement and for other reasons deemed appropriate by DPS. DPS agrees to notify the Purchaser in writing of the content of any amendment. The Purchaser can make no modification or amendment to this Agreement unless in writing and signed by both parties.

16. Indemnification.

The Purchaser agrees to indemnify and save harmless the State of Texas and DPS, and any of their officers, agents, or employees, with respect to any claim asserted against them under the federal Driver Privacy Protection Act of 1994, as amended (18 USC §2721 et seq.), Texas driver privacy protection legislation (Tex Trans Code §730, as amended), and other state or federal law pertaining to this agreement, for any act or omission attributable to the Purchaser, its officer, agents, and employees, and others who obtain information from the Purchaser.

17. Contact Information.

The following contact person is designated by the Purchaser to receive all correspondence regarding this agreement.

Name _____

Address _____

City, State Zip Code _____

Telephone _____

Fax _____

All correspondence to DPS regarding this contract must be mailed to the following address:

Texas Department of Public Safety
Driver Record Bureau
P.O. Box 4087
Austin, Texas 78773-0360
(512) 424-2009

5

18. Governing Law and Jurisdiction.

This agreement shall be construed in accordance with the laws of the State of Texas. The Purchaser agrees that any dispute which arises under this agreement and cannot be amicably resolved by the parties shall be submitted to a court of competent jurisdiction in Travis County, Texas, to which jurisdiction the Purchaser hereby submits.

19. Signatory Authority.

The signatories hereby certify that they are authorized by their respective parties to execute this agreement as party representatives and to bind their respective principals hereto.

IN WITNESS WHEREOF the representatives of the parties have affixed their signatures on the dates as written below.


_____          _____
PURCHASER                                   DEPARTMENT OF PUBLIC SAFETY


_____          _____
NAME AND TITLE                              NAME AND TITLE


_____          _____
DATE                                        DATE

6

# EXHIBIT D



THE COMMONWEALTH OF MASSACHUSETTS

OFFICE OF THE ATTORNEY GENERAL

ONE ASHBURTON PLACE

BOSTON, MASSACHUSETTS 02108

MARTHA COAKLEY
ATTORNEY GENERAL

(617) 727-2200
www.mass.gov/ago

November 10, 2009

Paul J. Bond
Reed Smith LLP
136 Main St., Suite 250
Princeton, NJ 08540-7839

Re:    **Your Public Records Request**

Dear Mr. Bond:

In response to your October 22, 2009, public records request, I enclose a true and accurate copy of the October 9, 1998, letter sent by Robert McFetridge of the U.S. Department of Justice to Assistant Attorney General Peter Sacks, and a signed copy of AAG Sacks's May 1, 1998, original letter to the Department of Justice.

Please be advised that, in our discretion, we have elected to waive any cost associated with the production of the enclosed responsive records you requested.

Very truly yours,

Robert L. Quinan, Jr.
Assistant Attorney General
Government Bureau

RLQ/dl

Enclosures



**U.S. Department of Justice**

Civil Division

RECEIVED

OCT 13 1998

OFFICE OF THE
ATTORNEY GENERAL

*Special Counsel*
*Telephone: (202)514-3886*
*Fax: (202) 514-8071*

*Main Justice Building, Room 3644*
*950 Pennsylvania Avenue, N.W.*
*Washington, D.C. 20530*

October 9, 1998

Peter Sacks
Chief, Government Bureau
Office of the Attorney General
The Commonwealth of Massachusetts
One Ashburton Place
Boston, MA 02108-1698

RE: Interpretation of the Driver's Privacy Protection Act of 1997

Dear Mr. Sacks,

This responds to your letter of May 1, 1998 (Encl), requesting guidance on the U.S. Department of Justice's interpretation of 18 U.S.C. §§ 2721-2725, the Driver's Privacy Protection Act of 1997. Specifically, you posed the question of whether the Massachusetts Registry of Motor Vehicles may release personal information to a commercial distributor who disseminates the information only to other authorized recipients or entities that use the information solely for authorized purposes. Under these circumstances, we believe that such releases are permissible under the statute.

We agree with the general proposition that a commercial distributor may qualify as an authorized recipient of personal information under the statute. Several of the permissive release provisions in the statute regulate only the ultimate use of the personal information without specifying or restricting who may obtain the information in order to accomplish that authorized purpose. Accordingly, personal information reasonably may be released to an entity that certifies that it will use the information for an authorized purpose. The entity receiving the information for that purpose would be an "authorized recipient" under the statute, and may further disseminate the information in accordance with the resale or redisclosure provisions of subsection (c). Notably, the redisclosure section does not limit resales or redisclosures of personal information to the single

-2-

category of uses for which the information was originally obtained. Rather, the authorized recipient may redisclose the information for "a use permitted under subsection (b)" [except subsections (b)(11) and (b)(12)]. Thus, a distributor may obtain information for one authorized purpose, but redisclose that information for a different authorized purpose (or to another authorized recipient) under the statute.

Under the circumstances described in your letter, the Massachusetts Registry of Motor Vehicles may release personal information to a distributor upon reasonably concluding that the information will be used for authorized purposes only. Such a practice would be consistent with current Department of Justice enforcement policy recommendations to the Attorney General. This opinion is merely advisory, however. It is not binding upon the U.S. Attorney General and should not be construed as creating any substantive rights or benefits under the law.

Sincerely,

Robert C. McFetridge

Robert C. McFetridge
Special Counsel to the Assistant
    Attorney General,
    Civil Division

Encl



SCOTT HARSHBARGER
ATTORNEY GENERAL

(617) 727-2200

*The Commonwealth of Massachusetts*
*Office of the Attorney General*
*One Ashburton Place*
*Boston, MA 02108-1698*

May 1, 1998

Eleanor Dean Acheson
Assistant Attorney General
Chief, Office of Policy Development
Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

Re:   Interpretation of Drivers' Privacy Protection Act of 1997

Dear Ms. Acheson:

At the suggestion of several attorneys in your office, I write to you, on behalf of the Massachusetts Registry of Motor Vehicles (the "Massachusetts Registry"), to seek guidance from the Department of Justice on an interpretation question that has arisen with respect to the Drivers' Privacy Protection Act of 1994, 18 U.S.C. § 2721 (the "Act").

As you know, the Act, by its terms, is implemented by agencies of the various states, but is enforced federally by the Department of Justice. Our Office is presently confronted with its first potential challenge to the Massachusetts Registry's interpretation of the Act. This letter solicits the DOJ's view of the relevant language of the Act, or, at a minimum, the DOJ's assurance that the Massachusetts Registry's interpretation of the Act does not trigger any of the civil or criminal penalties enforced by the DOJ under the Act.

The specific question that has arisen is as follows:

A Massachusetts-based company has acted, for several years, as a distributor of information obtained from state Registries of Motor Vehicles. In Massachusetts, the company obtains "raw" data -- including "personal information" as that term is defined in the Act -- from the Massachusetts Registry, repackages the data in a CD-ROM format, and sells it to a variety of end-users, including law enforcement agencies, private investigators, and law firms. According to the company's attorney, its law enforcement customers include the DOJ and the Federal Bureau of Investigation. For the purposes of this analysis, I will accept the company's contention that all of its clients are either permitted recipients of personal information, as defined by the Act, or entities that have received the information for uses expressly permitted by the Act.

The question identified by the Massachusetts Registry is whether, and on what basis, it may release personal information to the distributor itself. The provision governing resale or redisclosure, section 2721(c), offers little guidance on the question, insofar as it permits an

Eleanor Dean Acheson
Assistant Attorney General
May 1, 1998
Page 2

"authorized recipient" of personal information -- a term that is defined nowhere in the Act -- to resell or redisclose the information to other parties for permitted uses. This, in turn, merely begs the original question: on what basis can the distributor be considered an "authorized recipient" of the personal information in the first place?

The distributor, through its lawyer, has identified several sections of the Act which, it contends, authorize the company to receive the personal information. Section 2721(b)(1) permits disclosure "[f]or use by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State or local agency in carrying out its functions." Also, section 2721(b)(3) permits disclosure to any "legitimate business or its agents, employees, or contractors" for the limited purpose of verifying personal information voluntarily provided by an individual. Finally, section 2721(b)(4) permits the use of personal information "in connection with," among other things, "investigation in anticipation of litigation, and the execution or enforcement of judgments and orders," irrespective of the identity of the party using the information for such purposes.

The distributor has made a number of different arguments in support of its position that it is entitled to receive personal information from the Massachusetts Registry. First, it asserts that, because the sale of its CD-ROM product is restricted to entities who themselves would qualify as permitted users under the Act, this, without more, entitles the distributor to receive the information in the first instance.

The distributor's alternate position is that, since subsections (b)(1) and (b)(3) both expressly provide for disclosure to the "agent" of a specifically permitted user, the company merely has to establish an agency relationship with each of its clients in order to come within those exceptions. The distributor further contends that the "agency" relationship required by the statute may be limited to the sole purpose of obtaining the information. This theory, in turn, begs the question of whether the Act requires the "agent" to disclose the identity of its "principal." As may be expected, the distributor is somewhat reluctant to provide the Massachusetts Registry with its customer list. Moreover, continually updating the distributor's list of "principals" prior to each purchase of personal information (this particular distributor has historically bought information from the Massachusetts Registry on a quarterly basis) would be administratively burdensome for both the distributor and the Massachusetts Registry. The distributor has taken the further position that it need only establish an agency relationship with one permitted end-user in order to become an "authorized recipient" of that information, consonant with Section 2721(c) of the Act. Thereafter, the distributor argues, it is free to resell the information to as many other entities as it wishes, as long as each one qualifies as a permitted user under the Act.

Finally, the distributor argues that, since subsection (b)(4) conditions legal receipt of the information only upon the ultimate use, and not upon the identity of the recipient, there is no reason why the distributor cannot receive the information on behalf of law firms, for example, as long as the law firms use the information for the purposes specified in (b)(4), and that no formal

Eleanor Dean Acheson
Assistant Attorney General
May 1, 1998
Page 3

agency relationship is required. According to the lawyer for the distributor, a number of other state motor vehicle agencies have accepted this type of general representation that a distributor is acting on behalf of a permitted end-user as sufficient to permit the release of the personal information to the distributor.

To date, the Massachusetts Registry has neither formally adopted nor rejected the various positions of the distributor, and has a number of reservations regarding the theories. First, there does not appear to be a permitted use category in the Act that specifically encompasses the "sell only to permitted users" concept. With regard to the agency theory, the "agency" language in the statute, at least on its face, is susceptible to more than one interpretation. For example, the phrase "legitimate business or its agents," narrowly construed, could be read to extend only to entities that had pre-existing agency relationships with the legitimate business, or relationships for purposes other than the mere retrieval of personal information. On the other hand, section 2721(b)(4) makes no reference to an agency relationship, nor does it appear to make any distinction based on the identity of the requestor.

The Massachusetts Registry finds itself in a difficult position. On the one hand, it does not want to restrict unnecessarily the sale of a product which, by all accounts, is a valuable tool for law enforcement and other legitimate users. On the other hand, the Massachusetts Registry is cognizant that adopting too expansive an interpretation of the language of the Act may increase the risk of improper use of personal information, particularly by entities that exercise less control over the distribution of their products than the distributor at hand appears to do. Finally, an overbroad interpretation may expose the Massachusetts Registry and its employees to civil and/or criminal liability for violation of the Act.

As you know, the Act did not go into effect until September of 1997. To date, no federal agency has promulgated any regulations pertaining to enforcement or interpretation of the Act. Nor has any case law arisen to aid in interpretation of the Act. Accordingly, I would be grateful for your views on the various issues raised by the distributor and outlined above. Two Assistant Attorneys General in our Government Bureau, Thomas Barnico and Daniel Hammond, have already discussed this case informally with David Karp of your Office of Policy Development and Craig Blackwell of the DOJ's Civil Division. While Messrs. Karp and Blackwell discussed the general structure of the Act, they acknowledged that they could offer us no advice with regard to our specific case, insofar as the DOJ, to date, has made no formal decisions about interpretation of the Act.

Toward that end, we would welcome your view of the legal questions described above. Our Office, as counsel to the Massachusetts Registry, does not seek needlessly to invite litigation over a

Eleanor Dean Acheson
Assistant Attorney General
May 1, 1998
Page 4

question that the DOJ may already have resolved; nor do we wish to expose Registry employees to civil or criminal penalties for unwittingly violating the Act.

      Thank you in advance for your assistance.

Sincerely,

Peter Sacks
Chief, Government Bureau

F:\USERS\HAMMOD\WPWIN61\WPDOCS\RENO\LT.REN